## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Daniel G. Foote
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine A. Cornelius
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Termination of the
Parent-Child Relationship of:

J.N. (Minor Child),

and

A.N. (Mother),

*Appellant-Respondent,*

v.

The Indiana Department of
Child Services,

*Appellee-Petitioner*

August 16, 2019

Court of Appeals Case No.
19A-JT-433

Appeal from the Marion Superior
Court

The Honorable Mark A. Jones,
Judge
The Honorable Larry Bradley,
Magistrate

Trial Court Cause No.
49D15-1808-JT-926

**Baker, Judge.**

[1] A.N. (Mother) appeals the juvenile court's order terminating her parent-child relationship with J.N. (Child), arguing that the evidence is insufficient to support the order. Finding the evidence sufficient, we affirm.

## Facts

[2] Child was born to Mother on December 5, 2014,[1] with marijuana in his system. As a result, the Department of Child Services (DCS) became involved with the family and Mother participated successfully in a program of informal adjustment.

[3] On August 20, 2017, DCS received a report that Mother had been arrested, leaving no caregiver for Child. Mother explained to the Family Case Manager (FCM) that police had searched her car at a gas station and found a syringe in her purse and heroin in a cigarette pack, both of which were within the reach of two-year-old Child. Additionally, Child had been unrestrained in the vehicle because Mother did not have a car seat for him. DCS removed Child, placed him in foster care, and filed a petition alleging that he was a Child in Need of Services (CHINS). On November 29, 2017, the juvenile court found Child to be a CHINS based on Mother's admission that she needed "assistance in maintaining a home free from substance abuse." Tr. Ex. 61.

---

[1] Child's father is not a part of this appeal.

[4] During the CHINS case, Mother eventually pleaded guilty to possession of heroin for the incident that resulted in the CHINS case. Mother failed to appear at multiple hearings in her criminal case and had approximately seven bench warrants issued at various times as a result. She was incarcerated on and off during the CHINS case. In addition to the possession conviction, Mother pleaded guilty to theft after shoplifting from a Walmart during the CHINS case.

[5] The juvenile court ordered Mother to participate with a substance abuse assessment. She failed to do so even though DCS referred her to the assessment five times. She began an intensive outpatient treatment program (IOP) in the fall of 2018 but was unsuccessfully discharged for disrupting the groups, arriving late, and smelling of marijuana. During the CHINS case, Mother submitted to only 15 out of over 100 requested drug screens, and all 15 were positive for, among other things, methamphetamine, marijuana, heroin, and fentanyl. Five days before the termination trial, Mother finally completed a substance abuse assessment to satisfy a condition of probation, but she refused to participate in the recommended treatment.

[6] During the CHINS case, Mother wanted, but did not find, employment and stable housing independent of her own mother's (Grandmother) home. She was employed for only a couple of months during the CHINS case.

[7] Mother's therapist testified that Mother had made only minimal progress on her issues because she was unwilling to take responsibility for her actions. The therapist believed that Mother was at very high risk of drug abuse relapse.

When the therapist visited Mother at Grandmother's home, it was cluttered and there were many animals in the home and feces on the floor.

[8] Mother's home-based case manager testified that she had serious concerns about Mother's relationship with Grandmother—they continuously argued, even during therapy sessions. Grandmother is the victim of domestic violence from her boyfriend or husband, who still lived with her, and has not completed any domestic violence counseling. When DCS assessed Grandmother as a possible relative care placement for Child on three occasions during the CHINS case, all were unsuccessful. First, the home was unsuitable because the abuser still lived in the home; second, the home was unsuitable because Grandmother refused to cooperate with the assessment process; finally, the home was unsuitable because Grandmother tested positive for methamphetamine. Grandmother refused to submit to a drug screen on the day of the termination hearing.

[9] Mother's visitation supervisor testified that the referral for that service closed three times for incarcerations or failures to show for visitation. The supervisor believed that Mother was using drugs because she often fell asleep during visits. Mother spent too much time talking on the phone and cancelled often in the beginning. She allowed Child to watch videos and movies on her phone instead of interacting with him.

[10] Six days before the termination hearing, Mother successfully completed a twenty-one-day inpatient substance abuse program. That was Phase I of the

program. Phase II consisted of another fifty-four days, but Mother refused to participate and instead planned to report to work release on January 28, 2019.[2] She also refused to comply with the program's recommendation that she remain in inpatient treatment for another ten days until she reported to work release.

[11] On August 15, 2018, DCS filed a petition to terminate the parent-child relationship, and the factfinding hearing took place on January 24, 2019. Child's Court Appointed Special Advocate (CASA) testified that in her opinion, it was in Child's best interests that the parent-child relationship be terminated. The case had been open for seventeen months, and Mother had only begun to try to address her addictions in the previous twenty-one days. She still did not have a suitable home or the financial means to care for Child. The FCM agreed, testifying that Mother was unable to provide Child with safe and stable housing, that her criminal activities and drug use posed a threat to Child's safety, and that Mother had not demonstrated an ability or intention to remain sober. Child is bonded to and thriving in the care of his foster parents, who plan to adopt him. On January 29, 2019, the juvenile court entered an order granting the termination petition. Mother now appeals.

---

[2] Employees with the substance abuse treatment facility offered to explain to the trial court why it was important that Mother continue with her substance abuse treatment in the hope that her work release program could be delayed. Mother refused that offer.

# Discussion and Decision

## I. Standard of Review

[12] Our standard of review with respect to termination of parental rights proceedings is well established. In considering whether termination was appropriate, we neither reweigh the evidence nor assess witness credibility. *K.T.K. v. Ind. Dep't of Child Servs.*, 989 N.E.2d 1225, 1229 (Ind. 2013). We will consider only the evidence and reasonable inferences that may be drawn therefrom in support of the judgment, giving due regard to the trial court's opportunity to judge witness credibility firsthand. *Id.* Where, as here, the trial court entered findings of fact and conclusions of law, we will not set aside the findings or judgment unless clearly erroneous. *Id.* In making that determination, we must consider whether the evidence clearly and convincingly supports the findings, and the findings clearly and convincingly support the judgment. *Id.* at 1229-30. It is "sufficient to show by clear and convincing evidence that the child's emotional and physical development are threatened by the respondent parent's custody." *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 148 (Ind. 2005).

[13] Indiana Code section 31-35-2-4(b)(2) requires that a petition to terminate parental rights for a CHINS must make the following allegations:

> (A)    that one (1) of the following is true:
>
> > (i)    The child has been removed from the parent for at least six (6) months under a dispositional decree.

(ii)     A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

(iii)    The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B)     that one (1) of the following is true:

(i)      There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii)     There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii)    The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C)     that termination is in the best interests of the child; and

(D)     that there is a satisfactory plan for the care and treatment of the child.

DCS must prove the alleged circumstances by clear and convincing evidence. *K.T.K.*, 989 N.E.2d at 1230.

## II.  Sufficiency

## A.  Reasons for Removal

[14]  Mother first argues that the evidence does not establish a reasonable probability that the conditions resulting in Child's initial and continued removal outside her care and custody will not be remedied.  Child was initially removed because of concerns about Mother's substance abuse and criminal charges.  He continued to be removed based on those concerns as well as concerns about her lack of suitable housing.

[15]  During the CHINS case, Mother had many, many opportunities to participate with substance abuse treatment.  She failed to do so until the days leading up to the termination hearing—and then, she only did so because it was a required probation condition.  *See K.T.K.*, 989 N.E.2d at 1234 (holding that court is within its discretion to disregard evidence of remedial efforts made only shortly before the termination hearing).  She was unsuccessfully discharged from IOP and, while she successfully completed the first phase of an inpatient treatment program, she refused to comply with the recommendations following that program.  She completed only 15 of over 100 requested drug screens during the CHINS case; all 15 were positive for multiple illicit substances.  She used heroin while in jail and either heroin and/or methamphetamine while on home detention at Grandmother's house.  Her last use of methamphetamine was on

December 28, 2018, the same day she entered the inpatient program, four months after DCS filed the termination petition and just one month before the termination hearing. Mother's therapist believed that, even following the inpatient treatment program, Mother remained at a very high risk of relapse. She has yet to demonstrate that she is able to remain sober in an uncontrolled—or, indeed, even in a controlled—environment.

[16] Mother was working to complete her sentence in her criminal case. At the time of the termination hearing, it was reported that if she successfully completed the 111 days of work release, she would have no remaining obligations in that case. But she also committed at least one new crime—theft—while the CHINS case was ongoing—and frequently failed to appear at hearings in her criminal case.

[17] As for housing, at the time of the termination hearing she continued to live with Grandmother. Everyone—including Mother—agreed that Grandmother's home is not a suitable place for Child to live. But Mother made no progress over the course of the CHINS case towards finding her own independent suitable housing. Similarly, she was unable to find and maintain employment during the CHINS case.

[18] Mother focuses heavily on the month leading up to the termination hearing, when she completed Phase I of the inpatient treatment program. While we applaud her participation, the fact that she then refused to comply with the recommendations stemming from the program greatly undercuts the value of that participation. Moreover, over the life of the CHINS case, she repeatedly

failed to address her very serious substance abuse issues, despite multiple chances to do so. Under these circumstances, we find that the juvenile court did not err by concluding that there was a reasonable probability that the conditions leading to Child's initial and continued removal would not be remedied.[3]

## B. Best Interests

[19] Mother next argues that the juvenile court erred in determining that termination of the parent-child relationship is in Child's best interests.

[20] By the time of the termination hearing, Mother had failed to secure suitable housing or maintain employment. Despite seventeen months to address her substance abuse issues, she failed to take any real steps in that direction until the month leading up to the termination hearing—and even then, she refused to comply with further treatment recommendations. She used multiple illicit substances regularly throughout the CHINS proceeding. Child's CASA and the FCM testified that in their view, termination was in Child's best interests. Child's therapist testified that it would be traumatic to remove Child from his current placement. None of the service providers involved in the CHINS case even recommended that Mother be given unsupervised parenting time,

---

[3] As the elements are phrased in the disjunctive, we need not also address whether the evidence supports the juvenile court's finding that the continuation of the parent-child relationship posed a threat to Child's well-being. We note, however, that the same evidence discussed above likewise supports a conclusion that the juvenile court did not err in finding this element established by clear and convincing evidence.

including the visitation supervisor, who had multiple concerns based on her observations of Mother's interactions with Child.

[21] Given this record, we find that the juvenile court did not err by concluding that termination of the parent-child relationship is in Child's best interests.

## C. Satisfactory Plan

[22] Finally, Mother argues that DCS does not have a satisfactory plan for Child's care and treatment. Child has been in his current foster home since March 2018. He is bonded to his foster family and is well adjusted and thriving. His foster family has met his needs, including ensuring that he attended counseling and play therapy. They plan to adopt him. We find that the juvenile court did not err by concluding that this plan is satisfactory.

[23] The judgment of the juvenile court is affirmed.

Kirsch, J., and Crone, J., concur.